UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-80887-CIV-RYSKAMP/VITUNAC

BELAIRE AT BOCA, LLC, and
BELAIRE CLUB AT BOCA RATON
CONDOMINIUM ASSOCIATION, INC.,

       Plaintiffs,

v.

ASSOCIATIONS INSURANCE AGENCY, INC.
*et al*,

       Defendants.
_____/

**ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS**

THIS CAUSE comes before the Court upon motions to dismiss filed by five Defendants, all raising the same issues. Allied World Assurance **[DE 64]**, RSUI Indemnity **[DE 65]** and Westchester Surplus Lines Insurance **[DE 66]** all filed their motions to dismiss on January 18, 2007. Arch Speciality Insurance filed its motion to dismiss **[DE 95]** on February 28, 2007. And, Certain Underwriters at Lloyd's filed its joinder to the above motions to dismiss **[DE 114]** on March 22, 2007. Plaintiffs' responded **[DE 82]** to Allied, RSUI and Westchester on February 5, 2007 and responded **[DE 106]** to Arch on March 13, 2007. Allied, RSUI and Westchester replied **[DE 97]** on March 2, 2007. Arch replied **[DE 113]** on March 20, 2007. These motions are now ripe for adjudication.

**I.**    **Introduction**

This is an action against Defendants for damages and contract recission based on allegations of fraudulent and negligent misrepresentations, mistake and breach of fiduciary duty. This action

is brought pursuant to this Court's diversity jurisdiction.

Associa, a non-party to this action, is the parent company of Associations. Associa is the nation's largest property manager. AIA is also an affiliate of Associa. In early 2006, Plaintiffs discussed with AIA representatives, Dana Hodge (Rawlings) and Helen Eden, and USI representatives,[1] Perry Smith, Melinda Davis, and Jack Wagner, about obtaining property insurance for BelAire at Boca Condominium Community. Plaintiffs allege that they specifically discussed the extent of their coverage needs. For example, Plaintiffs allege that they told the AIA and USI representatives that their lender required windstorm coverage at a minimum of $50,475,000 per hurricane incident. Plaintiffs also required general liability, automobile liability and excess/umbrella liability insurance. Each insurance policy was to become effective no later than June 1, 2006; otherwise, Plaintiffs would be uninsured and would therefore be in default on their loan agreements. On May 12, 2006, Plaintiffs gave Davis and Rawlings copies of portions of their loan agreements indicating the insurance requirements that they needed to avoid default.

Plaintiffs allege that AIA, Associations, and USI[2] all promised that they would give Plaintiffs an insurance proposal well before June 1, 2006. They also promised that the policy would be at a lower rate than provided by any competitor. Since AIA is affiliated with Associa, the Agent Defendants were able to deliver lower cost insurance by bundling Plaintiffs insurance policies with all of Associa's other properties, therefore, decreasing the cost of Plaintiffs' insurance.

Agent Defendants repeatedly assured Plaintiffs that the insurance proposal would be quickly

---

[1] USI acted as AIA's co-broker for the insurance.

[2] In this Order, AIA, Associations, and USI are collectively referred to as "Agent Defendants" and RSUI, WSL, Arch, AWAC, and Lloyds of London are collectively referred to as "Carrier Defendants."

forthcoming. On May 25, 2006, Hodge sent Plaintiffs an e-mail confirming that they were working to obtain the needed underwriting but that Plaintiffs would be covered in accord with the lender's requirements. On May 31, 2006, Agent Defendants again assured Plaintiffs that the necessary insurance would be in place by midnight. At 6:00 p.m. these Defendants sent Plaintiffs an insurance proposal. Plaintiffs signed the contract after verifying that the "coverage of insurance" pages included $50,475,000 for named storm coverage. By signing the contract, Plaintiffs agreed to pay $1,067,499.28 in premiums annually, $923,692.50 of which was for named storm coverage. Plaintiffs made their first payment at this time.

Unrecognized by Plaintiffs, however, there was a discrepancy in the amount of coverage for named storm coverage on the coverage of insurance pages versus the insurance contract. The contract language stated that the listed premium included $40,000,000 in named storm coverage; if Agent Defendants were not able to obtain that amount of coverage, Plaintiffs would receive a refund or a credit. Plaintiffs made their first payment at this time.

Later that night, Plaintiffs received the certificate of insurance that provided named storm coverage for $10,000,000 as opposed to the required $50,475,000. Plaintiffs noted the problem but Agent Defendants refused to increase the coverage because of language in the contract that Plaintiffs allege contradicted the commitment to provide $50,475,000 in named storm coverage contained in the declaration pages. This language also stated that Agent Defendants would attempt to obtain $15,000,000 more for named storm coverage. Thus, the maximum coverage allowed under the contract would have been $40,000,000, $10,475,000 short of what Plaintiffs required.

Due to this language, Defendants argued that they were only required to have $25,000,000 of shared coverage for named storm coverage as of June 1. Since the original certificate only

provided $10,000,000 in coverage, Smith, Hodge, and Davis stated that they would provide a new certificate of insurance by June 2 with coverage for $25,000,000.

By June 7, Agent Defendants had still not sent the updated certificate. Plaintiffs inquired about the delay and Smith wrote an e-mail stating that they were still trying to get the increased coverage. Additional e-mails from Smith were received on June 9 and June 12 indicating that Agent Defendants were still trying to obtain the coverage. On June 13, Eden e-mailed Plaintiffs stating that the $25,000,000 in coverage was bound and that USI would issue a new certificate the next day. Plaintiffs received that certificate on June 26.

Despite their repeated assurances, Plaintiffs allege that Agent Defendants failed to provide the necessary coverage. Plaintiffs allege that AIA, Associations and USI knew that the above representations were untrue or made promises with a reckless disregard for the truth in order to secure Plaintiffs as an exclusive client. Because of this, Plaintiffs did not seek alternative insurance and were forced into default with their lender. Moreover, Defendants failed to issue Plaintiffs a refund on their premiums since they were charged $40,000,000 for named storm coverage and that amount of coverage was never obtained.[3] Agent Defendants did not provide the policies until December 2006 and have yet to provide the policy endorsements.

Carrier Defendants issued Plaintiffs policies, policy endorsements and other documents binding Plaintiffs after the commencement of the lawsuit. Without Plaintiffs' knowledge or consent, Associations was placed as the named insured on all of the insurance policies covering Plaintiffs' property. This caused Plaintiffs to default on the loan agreement with their lender. Because they

---

[3] In fact, Plaintiffs allege that when they requested that the named storm coverage be increased to $40,000,000, Smith stated in e-mails on July 12 and July 31 that Plaintiffs would have to pay an additional $800,000 annually to increase the coverage.

defaulted, Plaintiffs' lender obtained the necessary insurance coverage for which Plaintiffs were responsible. As such, Plaintiffs suffered damage to their reputation. To cure the default, Plaintiffs obtained coverage from Citizens Insurance and cancelled their policy with Defendants. In response, Defendants demanded $424,094.51 in premiums.

Plaintiffs allege that Agent Defendants had a duty to comparison shop with other insurance providers to determine whether this insurance policy was the best offer, but that Agent Defendants failed to do so.

## II.    Discussion

Plaintiffs allege six counts in their complaint. Only count one pertains to the issues raised in this motion to dismiss. In that count, Plaintiffs allege rescission based on fraud or mistake against all Defendants. Plaintiffs allege that they accepted the insurance policy due to Defendants' fraud, mistake or misrepresentations. Plaintiffs relied on Agent Defendants' representations made in the proposal of insurance but that the promised coverage was never provided, which constitutes a material change in the agreement. Had Plaintiffs known that Defendants' representations were untrue, they would have rejected the coverage. Thus, the issue in this Order concerns whether Plaintiffs have stated a claim against Allied, RSUI, Westchester, Arch and Underwriters at Lloyd's, collectively the Carrier Defendants, in this count.

### A.    Standard of Law on Motions to Dismiss

In general, a court should only grant a motion to dismiss for failure to state a claim "when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also* Fed. R. Civ. P. 12(b)(6).

A motion to dismiss merely tests the sufficiency of the complaint; it does not decide the merits of the case. *See Wein v. American Huts, Inc.*, 313 F. Supp. 2d 1356, 1359 (S.D. Fla. 2004). Moreover, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The rules "do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47.

When considering a motion to dismiss, the court must accept the well-pled facts in the complaint as true and construe them in the light most favorable to the plaintiff. *Beck v. Deloitte & Touche et al.*, 144 F.3d 732, 735 (11th Cir. 1998). As the Eleventh Circuit has noted, "the threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low." *In re Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir. 1995) (quotations omitted). Nonetheless, to withstand a motion to dismiss, it is axiomatic that the complaint must allege facts sufficiently setting forth the essential elements of a cause of action. *See Wein*, 313 F. Supp. 2d at 1359.

### B. Analysis

Carrier Defendants argue that Plaintiffs complaint should be dismissed against them for (1) failure to state a claim for rescission, (2) failure to plead the facts supporting its fraud claim with specificity, and (3) failure to meet the requirements of Florida Statute § 627.428 for attorney's fees. Each of these contentions will be discussed below.

**Rescission**

Rescission is an equitable remedy wherein the goal is to place the parties in the position that

each enjoyed before the contract was executed. *Billian v. Mobil Corp.*, 710 So.2d. 984, 990 (Fla. 4th DCA 1998). This relief is not given as a matter of right; thus, this Court has discretion to allow rescission based on the particulars of a case and in the interest of justice. *Id*. To state a claim for rescission Plaintiffs must have pled facts demonstrating the following: (1) the parties' relationship or character; (2) a contract; (3) fraud, mistake, false representations, impossibility of performance, or other ground for rescission; (4) that the party seeking rescission actually rescinded the contract and notified the other party accordingly; (5) if the moving party received benefits from the contract, Plaintiffs must allege that they attempted to restore those benefits; and (6) there is no adequate remedy at law. *Id*. at 991, *citing*, *Crown Ice Machine Leasing Co. v. Sam Senter Farms Inc.*, 174 So.2d 614, 617 (Fla 2nd DCA 1965).

First, Plaintiffs adequately pled their relationship to the Carrier Defendants and the existence of a contract (elements one and two). In the proposal of insurance, attached to the amended complaint, all Carrier Defendants are listed as "Insurance Company." On the last page of the agreement, titled "Agreement/Authorization to Bind Coverage" the only signature block is for the "Signature of the Insured or Insured's Representative / Title." This signature block is signed and dated by a representative for Belaire at Boca LLC. Then, the amended complaint alleges that Carrier Defendants issued an insurance policy to Plaintiffs. Thus, based on the information provided, Plaintiffs have sufficiently pled facts demonstrating the existence of these two elements.

Second, Plaintiffs have sufficiently plead the existence of fraud and false misrepresentation based on their allegations that the Agent Defendants told Plaintiffs that they would receive a higher amount of coverage than what was ultimately provided in the contract. Although all of the fraud and misrepresentations alleged were made by the Agent Defendants, those misrepresentations directly

impact the formation of the contract. Moreover, discovery could uncover an agency relationship between the Agent and Carrier Defendants. As such, this Court holds that Plaintiff has alleged enough facts in the amended complaint to support its claim.

Third, Plaintiffs stated in the amended complaint that they notified Defendants that the policy was cancelled, which is sufficient to state a claim. Fourth, Plaintiffs allege that they did not receive a benefit from the insurance contract and therefore have satisfied this element for the purposes of this stage of the litigation.

In regard to element six, the *Billian* Court held that Plaintiffs are only required to make a short and plain statement of the court's jurisdiction and the facts supporting each claim in the amended complaint. As such, courts cannot usually "determine the adequacy of a remedy at law until the facts are developed." Thus, this determination is usually left until the end of a case, often after the jury renders a verdict on the entitlement to it. *Billian* at 991. Therefore, it is premature to dismiss the amended complaint on this basis.

**Fraud**

Fraud must be pled with particularity. Fed. R. Civ. Pro. 9(b). Carrier Defendants allege that Plaintiffs have failed to meet this requirement because they have alleged fraud against all Defendants instead of detailing the factual basis supporting the fraud claim, including specifically which Defendant made each fraudulent representation.

Essentially, the amended complaint alleges that Agent Defendants lured Plaintiffs into an insurance agreement knowing that they were not able to obtain the needed amount of insurance and delayed making the insurance offer until Plaintiffs were so pressed for time that they were coerced into accepting the Carrier Defendants' offer. The amended complaint satisfies the requirement to

plead fraud with particularity by stating the date of each communication, the sender, the content, and the impact that the communication had to induce Plaintiffs' reliance. Moreover, as explained above, discovery may uncover an agency relationship between all defendants; and, at the very least, the fraud an misrepresentations made by the Agent Defendants impact the essence of the contract. Thus, Plaintiffs have satisfied the requirement to plead fraud claims with particularity contained in Rule 9(b).

**Attorney's Fees**

Finally, Carrier Defendants argue that Plaintiffs cannot request attorney's fees pursuant to Florida Statue § 627.428 because there is no judgement against the Carrier Defendants. This statute does not prohibit a Plaintiff from requesting attorney's fees in their amended complaint, but rather only prohibits a Court from awarding those fees if the Defendant prevails. Thus, Carrier Defendants' motions to dismiss are denied.

**III.   Conclusion**

The Court has considered the Motions and the pertinent portions of the record, it is hereby,

ORDERED AND ADJUDGED that the Motions to Dismiss **[DE 64, 65, 66, 95, 114]** are DENIED.

DONE AND ORDERED in Chambers at West Palm Beach, Florida, this 20 day of June, 2007.

     /s/ Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

Copies provided:
All counsel of record