UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-80887-CIV-RYSKAMP/VITUNAC

BELAIRE AT BOCA, LLC, and
BELAIRE CLUB AT BOCA RATON
CONDOMINIUM ASSOCIATION, INC.,

        Plaintiffs,

v.

ASSOCIATIONS INSURANCE AGENCY, INC.
*et al*,

        Defendants.
_____/

**ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS**

THIS CAUSE comes before the Court upon Associations and AIA's Motion to Dismiss **[DE 84]** filed on February 12, 2007. Plaintiffs Responded **[DE 102]** on March 7, 2007. Defendants Replied **[DE 108]** on March 14, 2007. The motion is ripe for adjudication.

**I.    Introduction**

This is an action against Defendants for damages and contract recission based on allegations of fraudulent and negligent misrepresentations, mistake and breach of fiduciary duty. This action is brought pursuant to this Court's diversity jurisdiction.

Associa, a non-party to this action, is the parent company of Associations. Associa is the nation's largest property manager. AIA is also an affiliate of Associa. In early 2006, Plaintiffs discussed with AIA representatives, Dana Hodge (Rawlings) and Helen Eden, and USI representatives,[1] Perry Smith, Melinda Davis, and Jack Wagner, about obtaining property insurance

---

[1] USI acted as AIA's co-broker for the insurance.

for BelAire at Boca Condominium Community. Plaintiffs allege that they specifically discussed the extent of their coverage needs. For example, Plaintiffs allege that they told the AIA and USI representatives that their lender required windstorm coverage at a minimum of $50,475,000 per hurricane incident. Plaintiffs also required general liability, automobile liability and excess/umbrella liability insurance. Each insurance policy was to become effective no later than June 1, 2006; otherwise, Plaintiffs would be uninsured and would therefore be in default on their loan agreements. On May 12, 2006, Plaintiffs gave Davis and Rawlings copies of portions of their loan agreements indicating the insurance requirements that they needed to avoid default.

Plaintiffs allege that AIA, Associations, and USI[2] all promised that they would give Plaintiffs an insurance proposal well before June 1, 2006. They also promised that the policy would be at a lower rate than provided by any competitor. Since AIA is affiliated with Associa, the Agent Defendants were able to deliver lower cost insurance by bundling Plaintiffs insurance policies with all of Associa's other properties, therefore, decreasing the cost of Plaintiffs' insurance.

Agent Defendants repeatedly assured Plaintiffs that the insurance proposal would be quickly forthcoming. On May 25, 2006, Hodge sent Plaintiffs an e-mail confirming that they were working to obtain the needed underwriting but that Plaintiffs would be covered in accord with the lender's requirements. On May 31, 2006, Agent Defendants again assured Plaintiffs that the necessary insurance would be in place by midnight. At 6:00 p.m. these Defendants sent Plaintiffs an insurance proposal. Plaintiffs signed the contract after verifying that the "coverage of insurance" pages included $50,475,000 for named storm coverage. By signing the contract, Plaintiffs agreed to pay

---

[2] In this Order, AIA, Associations, and USI are collectively referred to as "Agent Defendants" and RSUI, WSL, Arch, AWAC, and Lloyds of London are collectively referred to as "Carrier Defendants."

$1,067,499.28 in premiums annually, $923,692.50 of which was for named storm coverage. Plaintiffs made their first payment at this time.

Unrecognized by Plaintiffs, however, there was a discrepancy in the amount of coverage for named storm coverage on the coverage of insurance pages versus the insurance contract. The contract language stated that the listed premium included $40,000,000 in named storm coverage; if Agent Defendants were not able to obtain that amount of coverage, Plaintiffs would receive a refund or a credit. Plaintiffs made their first payment at this time.

Later that night, Plaintiffs received the certificate of insurance that provided named storm coverage for $10,000,000 as opposed to the required $50,475,000. Plaintiffs noted the problem but Agent Defendants refused to increase the coverage because of language in the contract that Plaintiffs allege contradicted the commitment to provide $50,475,000 in named storm coverage contained in the declaration pages. This language also stated that Agent Defendants would attempt to obtain $15,000,000 more for named storm coverage. Thus, the maximum coverage allowed under the contract would have been $40,000,000, $10,475,000 short of what Plaintiffs required.

Due to this language, Defendants argued that they were only required to have $25,000,000 of shared coverage for named storm coverage as of June 1. Since the original certificate only provided $10,000,000 in coverage, Smith, Hodge, and Davis stated that they would provide a new certificate of insurance by June 2 with coverage for $25,000,000.

By June 7, Agent Defendants had still not sent the updated certificate. Plaintiffs inquired about the delay and Smith wrote an e-mail stating that they were still trying to get the increased coverage. Additional e-mails from Smith were received on June 9 and June 12 indicating that Agent Defendants were still trying to obtain the coverage. On June 13, Eden e-mailed Plaintiffs stating that

the $25,000,000 in coverage was bound and that USI would issue a new certificate the next day. Plaintiffs received that certificate on June 26.

Despite their repeated assurances, Plaintiffs allege that Agent Defendants failed to provide the necessary coverage. Plaintiffs allege that AIA, Associations and USI knew that the above representations were untrue or made promises with a reckless disregard for the truth in order to secure Plaintiffs as an exclusive client. Because of this, Plaintiffs did not seek alternative insurance and were forced into default with their lender. Moreover, Defendants failed to issue Plaintiffs a refund on their premiums since they were charged $40,000,000 for named storm coverage and that amount of coverage was never obtained.[3] Agent Defendants did not provide the policies until December 2006 and have yet to provide the policy endorsements.

Carrier Defendants issued Plaintiffs policies, policy endorsements and other documents binding Plaintiffs after the commencement of the lawsuit. Without Plaintiffs' knowledge or consent, Associations was placed as the named insured on all of the insurance policies covering Plaintiffs' property. This caused Plaintiffs to default on the loan agreement with their lender. Because they defaulted, Plaintiffs' lender obtained the necessary insurance coverage for which Plaintiffs were responsible. As such, Plaintiffs suffered damage to their reputation. To cure the default, Plaintiffs obtained coverage from Citizens Insurance and cancelled their policy with Defendants. In response, Defendants demanded $424,094.51 in premiums.

Plaintiffs allege that Agent Defendants had a duty to comparison shop with other insurance providers to determine whether this insurance policy was the best offer, but that Agent Defendants

---

[3] In fact, Plaintiffs allege that when they requested that the named storm coverage be increased to $40,000,000, Smith stated in e-mails on July 12 and July 31 that Plaintiffs would have to pay an additional $800,000 annually to increase the coverage.

failed to do so.

## II.     Discussion

Plaintiffs allege six counts in their complaint: (1) rescission based on fraud or mistake, (2) breach of fiduciary duty, (3) fraudulent misrepresentations, (4) negligent misrepresentations, (5) breach of contract, (6) negligent procurement, as well as punitive damages and attorney's fees. Defendants have moved to dismiss each of these counts.

### A.     Standard of Law on Motions to Dismiss

In general, a court should only grant a motion to dismiss for failure to state a claim "when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also* Fed. R. Civ. P. 12(b)(6). A motion to dismiss merely tests the sufficiency of the complaint; it does not decide the merits of the case. *See Wein v. American Huts, Inc.*, 313 F. Supp. 2d 1356, 1359 (S.D. Fla. 2004). Moreover, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The rules "do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47.

When considering a motion to dismiss, the court must accept the well-pled facts in the complaint as true and construe them in the light most favorable to the plaintiff. *Beck v. Deloitte & Touche et al.*, 144 F.3d 732, 735 (11th Cir. 1998). As the Eleventh Circuit has noted, "the threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim

is exceedingly low." *In re Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir. 1995) (quotations omitted). Nonetheless, to withstand a motion to dismiss, it is axiomatic that the complaint must allege facts sufficiently setting forth the essential elements of a cause of action. *See Wein*, 313 F. Supp. 2d at 1359.

### B. Analysis

Defendants argue that Plaintiffs complaint should be dismissed for (1) failure to plead the facts supporting its fraud claim with specificity, (2) failure to allege breach of contract, (3) failure to meet the requirements of Florida Statute § 627.428 for attorney's fees and (4) lack of ripeness of the breach of contract claim.

In this Court's Order denying the Carrier Defendant's motions to dismiss **[DE 141]**, this Court discussed Plaintiffs' alleged failure to plead adequate facts to support its claims of fraud. Thus, this Court relies on its ruling set forth in that Order and therefore that issue will not be reexamined here.

Moreover, the complaint does not seek attorney's fees from these defendants and therefore there is no valid dispute regarding attorney's fees. The remaining two contentions will be discussed below.

**Breach of Contract**

To make out a claim for breach of contract, Plaintiffs must show (1) a valid contract, (2) breach of the contract and (3) damages resulting from the breach. *Rollins, Inc. v. Butland*, 951 So.2d 860, 876 (2nd DCA 2006). In the motion, Defendants contend that Plaintiffs failed to identify the contract and then failed to allege how the contract was breached by which defendants. In the Reply, however, it appears that Defendants' actual dispute is that Plaintiffs failed to particularly identify which of the Agent Defendants was a party to the contract and which of those Defendants breached

the contract.

As stated above, the standard merely requires that the complaint put Defendants on notice so that they can adequately defend themselves. In paragraph thirty of the complaint, Plaintiffs specifically alleged that there was a contract and attached that contract to the complaint. Associations, AIA, and USI are all named because USI and AIA were co-brokers to the contract, as clearly explained in the complaint. It appears that Associations is also named because AIA and Associations are owned by the same parent company and because Associations was involved in the brokering of the deal. As such, it is appropriate for Plaintiffs to allege the existence of a contract with all of those defendants. Moreover, the complaint, in paragraphs thirty-one through thirty-seven, sufficiently allege a breach of the contract by the Agent Defendants to survive a motion to dismiss.

**Ripeness**

Finally, Defendants argue that Plaintiffs breach of contract claims are not ripe until after Plaintiff has exhausted all litigation with the Carrier Defendants. Defendants rely on a theory established in *Bloomberg v. USAA Casualty Ins. Co.*, 790 So.2d 1061, 1065 (Fla. 2001). In that case, the insured sued the carrier for denying a claim. He then sued the insurance agent for failure to create an insurance contract with the carrier. Thus, the insured was bringing inconsistent claims against the carrier and the agents. The claim against the carriers alleged that there was an insurance contract whereas the claim against the agent alleged that there was not a valid contract. The Florida Supreme Court held that the action against the agent was not ripe until after a court had ruled on the claims brought against the insurance carrier. As Defendants properly explain in their Reply, "[t]he reason no such claim accrues against the insurance agent [in *Bloomberg*] is because if a policy of insurance exists, by definition the insurance agent did nothing wrong, i.e., the plaintiff received the policy of

insurance that such plaintiff requested from the insurance agent." Reply at 6.

Defendants' argument that this theory applies in this case, however, is incorrect. Unlike in *Bloomberg* where the plaintiff presented inconsistent theories, here the Plaintiff has presented one consistent theory of the case. Plaintiffs have always contended that the Agent Defendants improperly secured the insurance contract with the Carrier Defendants. Although Plaintiffs seek recession from the Carrier Defendants, in Count I, the remaining counts are specifically against the Agent Defendants and have nothing to do with the rescission of the contract. Moreover, Plaintiffs are correct in stating that the *Bloomberg* rationale only applies to Count VI and is inapposite to the rest of the Counts.

As it stands, this Court agrees with Plaintiffs that the *Bloomberg* rationale does not apply here.

### III. Conclusion

The Court has considered the motion and the pertinent portions of the record, it is hereby,

ORDERED AND ADJUDGED that the motion to dismiss **[DE 84]** is DENIED. Accordingly, Defendants' Motion to Compel **[DE ]** is GRANTED as Plaintiff's sole objection to producing the requested information hinged on this Court's decision on this motion.

DONE AND ORDERED in Chambers at West Palm Beach, Florida, this 24 day of July, 2007.

    /s/ Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

Copies provided:
all counsel of record