UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-80887-CIV-RYSKAMP/VITUNAC

BELAIRE AT BOCA, LLC, and
BELAIRE CLUB AT BOCA RATON
CONDOMINIUM ASSOCIATION, INC.,

       Plaintiffs,

v.

ASSOCIATIONS INSURANCE AGENCY, INC.
*et al*,

       Defendants.
_____/

**ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS**

THIS CAUSE comes before the Court upon USI's Motion to Dismiss **[DE 81]** filed January 30, 2007. Plaintiffs Responded **[DE 103]** on March 7, 2007. USI Replied **[DE 123]** on April 6, 2007. The motion is ripe for adjudication.

**I.**    **Introduction**

This is an action against Defendants for damages and contract recission based on allegations of fraudulent and negligent misrepresentations, mistake and breach of fiduciary duty. This action is brought pursuant to this Court's diversity jurisdiction.

Associa, a non-party to this action, is the parent company of Associations. Associa is the nation's largest property manager. AIA is also an affiliate of Associa. In early 2006, Plaintiffs discussed with AIA representatives, Dana Hodge (Rawlings) and Helen Eden, and USI

Page -1-

representatives,[1] Perry Smith, Melinda Davis, and Jack Wagner, about obtaining property insurance for BelAire at Boca Condominium Community. Plaintiffs allege that they specifically discussed the extent of their coverage needs. For example, Plaintiffs allege that they told the AIA and USI representatives that their lender required windstorm coverage at a minimum of $50,475,000 per hurricane incident. Plaintiffs also required general liability, automobile liability and excess/umbrella liability insurance. Each insurance policy was to become effective no later than June 1, 2006; otherwise, Plaintiffs would be uninsured and would therefore be in default on their loan agreements. On May 12, 2006, Plaintiffs gave Davis and Rawlings copies of portions of their loan agreements indicating the insurance requirements that they needed to avoid default.

Plaintiffs allege that AIA, Associations, and USI[2] all promised that they would give Plaintiffs an insurance proposal well before June 1, 2006. They also promised that the policy would be at a lower rate than provided by any competitor. Since AIA is affiliated with Associa, the Agent Defendants were able to deliver lower cost insurance by bundling Plaintiffs insurance policies with all of Associa's other properties, therefore, decreasing the cost of Plaintiffs' insurance.

Agent Defendants repeatedly assured Plaintiffs that the insurance proposal would be quickly forthcoming. On May 25, 2006, Hodge sent Plaintiffs an e-mail confirming that they were working to obtain the needed underwriting but that Plaintiffs would be covered in accord with the lender's requirements. On May 31, 2006, Agent Defendants again assured Plaintiffs that the necessary insurance would be in place by midnight. At 6:00 p.m. these Defendants sent Plaintiffs an insurance

---

[1] USI acted as AIA's co-broker for the insurance.

[2] In this Order, AIA, Associations, and USI are collectively referred to as "Agent Defendants" and RSUI, WSL, Arch, AWAC, and Lloyds of London are collectively referred to as "Carrier Defendants."

proposal. Plaintiffs signed the contract after verifying that the "coverage of insurance" pages included $50,475,000 for named storm coverage. By signing the contract, Plaintiffs agreed to pay $1,067,499.28 in premiums annually, $923,692.50 of which was for named storm coverage. Plaintiffs made their first payment at this time.

Unrecognized by Plaintiffs, however, there was a discrepancy in the amount of coverage for named storm coverage on the coverage of insurance pages versus the insurance contract. The contract language stated that the listed premium included $40,000,000 in named storm coverage; if Agent Defendants were not able to obtain that amount of coverage, Plaintiffs would receive a refund or a credit. Plaintiffs made their first payment at this time.

Later that night, Plaintiffs received the certificate of insurance that provided named storm coverage for $10,000,000 as opposed to the required $50,475,000. Plaintiffs noted the problem but Agent Defendants refused to increase the coverage because of language in the contract that Plaintiffs allege contradicted the commitment to provide $50,475,000 in named storm coverage contained in the declaration pages. This language also stated that Agent Defendants would attempt to obtain $15,000,000 more for named storm coverage. Thus, the maximum coverage allowed under the contract would have been $40,000,000, $10,475,000 short of what Plaintiffs required.

Due to this language, Defendants argued that they were only required to have $25,000,000 of shared coverage for named storm coverage as of June 1. Since the original certificate only provided $10,000,000 in coverage, Smith, Hodge, and Davis stated that they would provide a new certificate of insurance by June 2 with coverage for $25,000,000.

By June 7, Agent Defendants had still not sent the updated certificate. Plaintiffs inquired about the delay and Smith wrote an e-mail stating that they were still trying to get the increased

coverage. Additional e-mails from Smith were received on June 9 and June 12 indicating that Agent Defendants were still trying to obtain the coverage. On June 13, Eden e-mailed Plaintiffs stating that the $25,000,000 in coverage was bound and that USI would issue a new certificate the next day. Plaintiffs received that certificate on June 26.

Despite their repeated assurances, Plaintiffs allege that Agent Defendants failed to provide the necessary coverage. Plaintiffs allege that AIA, Associations and USI knew that the above representations were untrue or made promises with a reckless disregard for the truth in order to secure Plaintiffs as an exclusive client. Because of this, Plaintiffs did not seek alternative insurance and were forced into default with their lender. Moreover, Defendants failed to issue Plaintiffs a refund on their premiums since they were charged $40,000,000 for named storm coverage and that amount of coverage was never obtained.[3] Agent Defendants did not provide the policies until December 2006 and have yet to provide the policy endorsements.

Carrier Defendants issued Plaintiffs policies, policy endorsements and other documents binding Plaintiffs after the commencement of the lawsuit. Without Plaintiffs' knowledge or consent, Associations was placed as the named insured on all of the insurance policies covering Plaintiffs' property. This caused Plaintiffs to default on the loan agreement with their lender. Because they defaulted, Plaintiffs' lender obtained the necessary insurance coverage for which Plaintiffs were responsible. As such, Plaintiffs suffered damage to their reputation. To cure the default, Plaintiffs obtained coverage from Citizens Insurance and cancelled their policy with Defendants. In response, Defendants demanded $424,094.51 in premiums.

---

[3] In fact, Plaintiffs allege that when they requested that the named storm coverage be increased to $40,000,000, Smith stated in e-mails on July 12 and July 31 that Plaintiffs would have to pay an additional $800,000 annually to increase the coverage.

Plaintiffs allege that Agent Defendants had a duty to comparison shop with other insurance providers to determine whether this insurance policy was the best offer, but that Agent Defendants failed to do so.

## II. Discussion

Plaintiffs allege six counts in their complaint. Plaintiffs allege six counts in their complaint: (1) rescission based on fraud or mistake, (2) breach of fiduciary duty, (3) fraudulent misrepresentations, (4) negligent misrepresentations, (5) breach of contract[4], (6) negligent procurement, as well as punitive damages and attorney's fees. Defendant has moved to dismiss each of these counts.

### A. Standard of Law on Motions to Dismiss

In general, a court should only grant a motion to dismiss for failure to state a claim "when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also* Fed. R. Civ. P. 12(b)(6). A motion to dismiss merely tests the sufficiency of the complaint; it does not decide the merits of the case. *See Wein v. American Huts, Inc.*, 313 F. Supp. 2d 1356, 1359 (S.D. Fla. 2004). Moreover, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The rules "do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47.

---

[4] This Count is only alleged as to AIA and is therefore not at issue here.

When considering a motion to dismiss, the court must accept the well-pled facts in the complaint as true and construe them in the light most favorable to the plaintiff. *Beck v. Deloitte & Touche et al.*, 144 F.3d 732, 735 (11th Cir. 1998). As the Eleventh Circuit has noted, "the threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low." *In re Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir. 1995) (quotations omitted). Nonetheless, to withstand a motion to dismiss, it is axiomatic that the complaint must allege facts sufficiently setting forth the essential elements of a cause of action. *See Wein*, 313 F. Supp. 2d at 1359.

### B. Analysis

Defendant argues that Plaintiffs' complaint should be dismissed for (1) failure to allege that USI issued the insurance contract, (2) failure to allege that USI owed Plaintiff a fiduciary duty, (3) alleging conflicting fact scenarios prohibited by law in Counts III and IV, (4) failure to account for the impact of the economic loss rule in Counts II, III and IV, (5) failure to plead the facts supporting its fraud claim with specificity, (6) failure to allege damages in Count VI, and (7) failure to present intentional misconduct ro gross negligence by USI to justify the award of punitive damages.

In this Court's Order denying the Carrier Defendants' motions to dismiss **[DE 141]**, this Court discussed Plaintiffs' alleged failure to plead adequate facts to support its claims of fraud. Thus, this Court relies on its ruling set forth in that Order and therefore that issue will not be reexamined here. The remaining contentions will be discussed below.

**Rescission Claim**

Rescission is an equitable remedy wherein the goal is to place the parties in the position that each enjoyed before the contract was executed. *Billian v. Mobil Corp.*, 710 So.2d. 984, 990 (Fla. 4th DCA

1998).  This relief is not given as a matter of right; thus, this Court has discretion to allow rescission based on the particulars of a case and in the interest of justice. *Id*.  To state a claim for rescission, Plaintiffs must have pled facts demonstrating the following: (1) the parties' relationship or character; (2) a contract; (3) fraud, mistake, false representations, impossibility of performance, or other ground for rescission; (4) that the party seeking rescission actually rescinded the contract and notified the other party accordingly; (5) if the moving party received benefits from the contract, Plaintiffs must allege that they attempted to restore those benefits; and (6) there is no adequate remedy at law.  *Id*. at 991, *citing*, *Crown Ice Machine Leasing Co. v. Sam Senter Farms Inc.*, 174 So.2d 614, 617 (Fla 2nd DCA 1965).

   USI claims that Plaintiffs failed to prove prong one in that USI is not an insurance carrier.  As Plaintiffs note, a party is indispensable when that party's presence is necessary to effect a complete return of the parties to their original position in a recession action. *Allman v. Wolfe*, 592 SO.2d 1261, 1263 (Fla. 2nd DCA1992).  The *Allman* court went on to say that all parties to a transaction are indispensable.  The question here this is whether USI is a party to the transaction.  This Court holds that it is.

   As the complaint clearly states, USI acted as an insurance broker between Plaintiffs and the Carrier Defendants.  As such, Plaintiffs communicated their needs to USI, who in turn communicated those needs to the Carrier Defendants.  Because they acted as an intermediary in the formation of the contract, USI is an indispensable party.

   Moreover, Plaintiffs allege that the rescission claim includes a demand that USI return any commissions paid for USI's work in securing the contract with Carrier Defendants.  USI argues that since Plaintiffs failed to specifically mention any commissions paid to USI in the rescission claim that

this count must be dismissed. Since USI is a necessary party on other grounds, this argument is not sufficient to dismiss USI from the count.

**Fiduciary Duty**

Breach of fiduciary duty requires a plaintiff to show that (1) a fiduciary duty exists, (2) the duty is breached, and (3) the breach proximately caused the damages. *Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002). USI argues that Plaintiffs failed to show any of these elements.

First, an insurance broker has a fiduciary relationship with an insured. *Moss v. Appel*, 718 So.2d 199, 201 (Fla. 4th DCA 1998). "An insurance broker is one who acts as a middleman between the insured and the insurer, and who solicits insurance from the public under no employment from any special company, and who, upon securing an order, places it with [an insurance company]." *Id*. In the complaint, Plaintiffs alleged that USI acted as a co-broker. Plaintiffs further allege that they spoke directly to representatives of both USI and AIA regarding their coverage needs. Plaintiffs even provided copies of the insurances clauses in their mortgage to a USI representative to assure that the proper amount of insurance was obtained.

USI argues that it owes no duty to Plaintiffs since USI retained them as co-brokers yet fails to provide any citations to authority to support that claim. Moreover, Plaintiffs cite case law that states that "[a] fiduciary relationship can exist with our without a contract between the parties." (Opposition at 5, *citing*, *In re Meridian Asset Mgmt., Inc.*, 296 B.R. 243, 262 (N.D. Fla. 2003). Thus, this Court holds that Plaintiffs have shown a fiduciary relationship between themselves and USI.

Second, USI argues that Plaintiffs failed to prove breach because AIA obtained insurance coverage. This, however, misunderstands Plaintiffs' argument. Plaintiffs allege that they were damaged because Agent Defendants failed to obtain the *requested* insurance coverage, not that

damage occurred because Agent Defendants failed to obtain coverage. Plaintiffs spend numerous paragraphs of their complaint illustrating what they told Agent Defendants that they needed by way of insurance coverage. Plaintiffs even went so far as to send Agent Defendant copies of the insurance requirements contained in the mortgage. When the insurance secured by the Agent Defendants did not match what Plaintiffs requested a breach may have occurred because Plaintiffs allege that Agent Defendants represented that the insurance coverage did match Plaintiffs' needs.

Third, USI alleges that Plaintiffs failed to allege damages because the only damages recognizable would have been if Plaintiffs suffered a loss that was not be covered by insurance. This Court does not agree. Agent Defendants failed to secure the kind of insurance that Plaintiffs needed, after Agent Defendants assured Plaintiffs that they could secure the needed insurance coverage. It was this failure that caused them to default on their mortgage and caused their lender to secure the necessary insurance itself. This saddled Plaintiffs with two insurance payments. These allegations are sufficient to show damages. *See, Newbern v. Mansbach*, 777 So.2d 1044 (Fla. 1st DCA 2001).

**False Representations**

For the purposes of Counts III and IV, Defendant alleges that Plaintiffs made inconsistent statements in the complaint regarding Defendant's alleged false statements. This Court holds that Plaintiffs' complaint can only be seen as inconsistent if one where to read parts of the complaint out of context. When properly read and understood, the complaint is not inconsistent and clearly explains the facts supporting its claims for fraudulent and negligent misrepresentations.

**Economic Loss Rule**

Next, Defendant argues that Counts II, III, and IV should be dismissed because the alleged misrepresentation is contained in the contract and therefore the economic loss rule bars recovery. As

correctly sited by Plaintiffs, long established law holds that the economic loss rule does not apply here because misrepresentations made in the formation of the contract do not implicate the economic loss rule. The economic loss rule is inapplicable if the claim in these counts is based on conduct that is separate and distinct from the conduct constituting the breach of contract. *Taylor v. Maness*, 941 So.2d 559, 564 (Fla 3rd DCA 2006). Here, Plaintiffs have not brought a breach of contract claim against USI. As indicated above, that count only applies to AIA.

**Damages**

Defendant correctly notes that a claim for negligent procurement requires allegations of damages resulting from a defendant's failure to secure insurance. *Mondesir v. Delva*, 851 So.2d 187, 189 (Fla. 3rd DCA 2003). USI argues that since Agent Defendants did obtain some insurance, Plaintiffs are unable to show any damages, and therefore Count VI should be dismissed. Again, Defendant misses the point. The crux of Plaintiffs' damages argument, as previously explained, is that Defendant's failure to secure the amount of insurance requested caused Plaintiffs to default on their mortgage. That in turn caused the bank with whom Plaintiffs have their mortgage, to secure another source of insurance. Plaintiffs therefore now have two insurance policies. One that the bank secured that provides the required amount of coverage and the other that Defendant helped to secure, that does not provide the required amount of coverage. Part of the damage, therefore, is the insurance contract that Defendant helped to secure, since the Carrier Defendants still want Plaintiff to preform under that contract. So here, the damage was not that Defendant failed to obtain insurance, but rather that Defendant failed to procure the proper insurance.

**Punitive Damages**

Finally, Defendant argues that Plaintiffs failed to allege sufficient facts to support an award of

punitive damages because Plaintiffs failed to allege intentional misconduct or gross negligence in the Complaint. Paragraph 87 of the Complaint states "AIA and USI are subject to punitive damages because of their intentional misconduct and/or gross negligence." To this end, Plaintiffs, in referencing the facts already cited, make allegations that Defendant USI made false representations with actual knowledge or acted recklessly. This is sufficient, at this time, to proceed with the punitive damage claim.

**III. Conclusion**

The Court has considered the motion and the pertinent portions of the record, it is hereby,

ORDERED AND ADJUDGED that the motion to dismiss **[DE 81]** is DENIED. Moreover, to the extent that Defendant properly raised a motion for more definite statement, see footnote 3 on page 16, that motion is likewise DENIED.

DONE AND ORDERED in Chambers at West Palm Beach, Florida, this 31 day of July, 2007.

    /s/ Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

Copies provided:
Al counsel of record